NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| STANLEY BAER et al., | : | |
| | : | Civil Action No. 11-1277 (SRC) |
| Plaintiffs, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion to dismiss the Complaint for lack of

subject matter jurisdiction by Defendant United States of America (the "Government.")  For the

reasons that follow, the motion to dismiss will be granted.

### BACKGROUND

Very briefly, this case arises from the well-known fraud perpetrated on investors by

Bernard Madoff.  Plaintiffs are investors defrauded by Madoff, and they bring this case to hold

the Government liable for their losses, filing a Complaint with three claims: 1) the Securities and

Exchange Commission ("SEC") was negligent in its investigations of Madoff, and the

Government is liable under the Federal Tort Claims Act ("FTCA"); 2) the SEC aided and abetted

the breaches of fiduciary duty perpetrated by Bernard L. Madoff Investment Securities LLC

("BLMIS"); and 3) the SEC aided and abetted the fraud perpetrated by BLMIS.  The Government

has moved to dismiss the Complaint.

**STANDARD OF REVIEW**

A.      **Motion To Dismiss Under Rule 12(b)(6)**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 127 S. Ct. at 1964 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted).

Factual allegations must be well-pleaded to give rise to an entitlement to relief:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007).  "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy."  New York v. Hill, 528 U.S. 110, 118 (2000).  Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

## ANALYSIS

A.   **Defendant's motion to dismiss**

The First Claim in the Complaint, for negligence under the FTCA, states:

170.   While the SEC may not have had a duty to investigate Madoff and BLMIS in the first instance, once it undertook to investigate Madoff and BLMIS in 1992, it had a duty to conduct its investigation in accordance with federal law, with its own internal standards, and consistent with the standards it imposes upon others.

171.   As set forth above and in greater detail in the Report, the SEC utterly failed to adhere to the aforesaid standards and thereby caused the Plaintiffs the loss of their investments, the loss of the amounts they paid in taxes to both federal and state taxing authorities, a reasonable return on their investments, and other economic damages.

The Government moves to dismiss the Complaint on the ground that, even if the SEC was negligent in its investigations of Madoff, it is shielded from liability because the SEC's conduct of those investigations falls within the discretionary function exception to the FTCA:

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  The United States has the burden of proving the applicability of the discretionary function exception.  Cestonaro v. United States, 211 F.3d 749, 756 n.5 (3d Cir. 2000).

The Supreme Court has held:

When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.  For a complaint to survive a motion to dismiss, it must

allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.

United States v. Gaubert, 499 U.S. 315, 324-325 (1991).

The Third Circuit uses a two-step inquiry to decide a question of the applicability of the discretionary function exception:

> Courts make two-part inquiries to determine whether the discretionary function exception applies in any particular case.  First, a court must determine whether the act giving rise to the alleged injury and thus the suit involves an 'element of judgment or choice.'  The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive.  The Supreme Court has stated:

>> If a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation.  If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy.  On the other hand, if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.

> Gaubert, 499 U.S. at 324, 111 S. Ct. at 1274 (internal citation omitted).

> Second, even if the challenged conduct involves an element of judgment, the court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield.

>> Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy.

> *Id.* (internal quotation marks and citations omitted). The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

Merando v. United States, 517 F.3d 160, 164-165 (3d Cir. 2008).

Plaintiffs argue that the Government has satisfied neither step of the two-step inquiry, and that the challenged conduct is neither discretionary nor grounded in policy.  As to the first step, Plaintiffs first contend that the discretionary function exception does not apply because the SEC's conduct violated mandatory regulations.  Plaintiffs cite to Berkovitz, and the relevant language is quoted here in context:

> In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee.  This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice.  Thus, the discretionary function exception will not apply when a federal statute,  regulation, or policy specifically prescribes a course of action for an employee to follow.  In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect.

Berkovitz v. United States, 486 U.S. 531, 536 (1988) (citations omitted).  Plaintiffs contend that the SEC violated federal regulations mandating impartial treatment in its investigations: 5 C.F.R. § 2635.101(b)(8) (public service employees shall act impartially); 17 C.F.R. § 200.64 (SEC must prosecute impartially); 17 C.F.R. § 200.61 (no member may allow an impression to prevail of improper influence); and 17 C.F.R. § 200.735-2(a) (SEC employees must maintain "unusually high standards" of impartiality).

Plaintiffs' argument that these regulations mandating impartiality suffice under Berkovitz to preclude application of the discretionary function exception appears meritless.  As shown in

the quote above from <u>Berkovitz</u>, the question here is whether a regulation "specifically prescribes a course of action for an employee to follow."  486 U.S. at 536.  Plaintiffs' brief skips over this question, but this Court does not see how any of the regulations cited by Plaintiffs specifically prescribes a course of action for an employee to follow.  These regulations are in the nature of ethical guidelines or requirements.  They provide abstract guidance about action, not specific courses of action.  Plaintiffs have cited no regulations mandating impartiality which prescribe any specific course of action.

Plaintiffs next contend that the SEC's conduct violated various SEC internal standards. Plaintiffs do not, however, provide any legal argument to link this to the discretionary function exception.  What is the basis for the implication that these internal standards fall within the scope of the "federal statute, regulation, or policy" required under <u>Berkovitz</u>?  Plaintiffs offer no basis for this Court to conclude that these alleged SEC internal standards fall within the scope of this <u>Berkovitz</u> requirement.

Next, Plaintiffs employ selective, misleading quoting when they assert:

> Numerous courts have recognized that, "once the government has undertaken a responsibility . . ., the execution of that responsibility is not subject to the discretionary function exception."  *See Marlys Bear Medicine v. U.S.*, 241 F.3d 1208, 1215 (9th Cir. 2001).

Now, let's look at what the Ninth Circuit actually wrote:

> While each case requires individual analysis, we have generally held that once the Government has undertaken responsibility for the safety of a project, the execution of that responsibility is not subject to the discretionary function exception. The decision to adopt safety precautions may be based in policy considerations, but the implementation of those precautions is not.

<u>Bear Medicine v. United States</u>, 241 F.3d 1208, 1215 (9th Cir. 2001) (citations omitted).  The

Ninth Circuit did not make the broad holding that Plaintiffs' misleading quote suggests. No one

would argue that the SEC undertook responsibility for the safety of the Madoff investors. Bear

Medicine is inapposite.

Nor are any of the other appellate cases cited by Plaintiffs along with Bear Medicine on

point. Boyd involved the government's responsibility as landowner for the safety of people on

its land. The Tenth Circuit stated: "We decline to extend the veil of discretion so that it covers

the failure to warn swimmers at Crappie Point of potential hazards, or the failure to prohibit

swimming in that area altogether." Boyd v. United States ex rel. United States Army, Corps of

Eng'rs, 881 F.2d 895, 898 (10th Cir. 1989). The instant case does not involve the Government as

landowner. Boyd is inapposite.

Lastly, Plaintiffs cite the Third Circuit's discussion of the discretionary function

exception in Cestonaro v. United States, 211 F.3d 749, 757 (3d Cir. 2000). Cestonaro is

distinguishable on the facts: the case stems from a suit by the victims of a shooting at night by

armed gunmen which occurred where the victims had parked their car on property owned and

controlled by the National Park Service. Id. at 751. Although the National Park Service had

notice that crimes had previously occurred in the area of the property in question, the Service had

done nothing to deter nighttime parking, nor to warn people of the dangers of such parking. Id.

at 752. The complaint alleged that "defendant was negligent in failing to provide adequate

lighting and correct the known dangerous condition and to warn others about the existence of the

dangerous condition." Id. "The United States filed a motion to dismiss under Fed. R. Civ. P.

12(b)(1) asserting the District Court lacked subject matter jurisdiction because the challenged

National Park Service actions fell under the discretionary function exception to the FTCA's

waiver of sovereign immunity." Id.

Thus, at the first step of the inquiry in Cestonaro, the Third Circuit considered "whether a

federal regulation or policy specifically prescribes a course of action." 211 F.3d at 754. The

Court found that no federal regulation or policy specifically prescribed a course of action in

regard to decisions about lighting and danger warnings for the land in question, and concluded

that the decisions at issue were discretionary. Id. at 755. At the second step, the Third Circuit

asked "whether the discretionary lighting and warning decisions are susceptible to policy analysis

and therefore enjoy the protection of the discretionary function exception." Id. The gist of the

Third Circuit's analysis at this step is in this statement: "We are unable to find a rational nexus

between the National Park Service's lighting or warning decisions (or non-decisions) and social,

economic and political concerns." Id. at 759.

The instant case is not like Cestonaro. Plaintiffs have cited a number of cases like

Cestonaro in which the government was liable as landowner. The instant case is neither a

landowner case nor anything close to it. Cestonaro is useful as an example of how the Third

Circuit applies the law, but it is not analogous on the facts. This Court now turns to the two-step

inquiry.

In the instant case, deciding the inquiry at the first step is easy: Plaintiffs have pointed to

no federal regulation or policy that specifically prescribes a course of action for the SEC. As

already established, the regulations cited by Plaintiffs are general ethical guidelines, not specific

descriptions of any course of action. Furthermore, as a matter of common sense, the decisions

made by the SEC regarding how to investigate Madoff appear to be discretionary, involving the

exercise of judgment. It is very difficult to view the conduct of an investigation into such a

complex matter as not principally involving the exercise of judgment.  Although in a different context, the Supreme Court has held the following: "This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." Heckler v. Chaney, 470 U.S. 821, 831 (1985).  The decisions of the SEC about Madoff were matters committed to that agency's discretion.

Plaintiffs' arguments to the contrary are difficult to square with the plain language of the 1934 Securities Exchange Act: "The Commission may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of this title . . ."  15 U.S.C. § 78u(a)(1).  In view of this language, this Court finds it especially difficult to agree with Plaintiffs that the manner in which the SEC conducts its investigations is not a matter entrusted to its discretion.[1]

As to the second step of the inquiry, the Government argues that the acts in question are susceptible to policy analysis.  While, in the moving brief, the Government does not articulate the policy analysis apart from its case citations, it does so in the reply brief, which contends, in sum, that:

> limited resources force the government to choose among competing priorities, such as whether to investigate possible "front-running" instead of a possible Ponzi scheme . . . At the end of the day, limited resources affect agency decisions concerning which laws to emphasize, which investigations to initiate, which leads to pursue, which witnesses to question, which questions to ask, and which documents to request. All of these decisions are susceptible to policy analysis . . .

---

[1] The Ninth Circuit took this same view of the statutory language.  Levy v. United States, 1992 U.S. App. LEXIS 2501 (9th Cir. Feb. 14, 1992).

(Def.'s Reply Br. 31.)  This is persuasive.  Indeed, decisions by a regulatory agency about who or

what to investigate are quintessential governmental policy decisions.  In a world in which

governmental resources are finite, the SEC cannot investigate everyone and everything.  The

agency must decide which leads are most worth pursuing, and which investigations are most

likely to produce the greatest public benefit.  Such decisions – about the depth and breadth of an

investigation, which implicate the allocation of resources such as manpower – fundamentally

entail matters of policy.

   If Plaintiffs prevailed, the SEC would become the guarantor of the investment decisions

of individuals who choose to participate in regulated markets.  While, undoubtedly, one function

of the SEC is to protect the public from people like Madoff, to impose an obligation on the

government to expend the resources sufficient to uncover every wrong which could be

discovered from a proper investigation is to impose an unlimited obligation on the government to

spend its resources on such endeavors, whether or not fiscal policy concerns might require

otherwise.

   In opposition, Plaintiffs argue that the Government's conduct is not susceptible to policy

analysis.  Plaintiffs contend that two Second Circuit cases stand for the proposition that the

laziness or carelessness of government officials is not protected by the discretionary function

exception.  Neither case, however, stands for the general proposition that Plaintiffs rely on.  In

Coulthurst v. United States, 214 F.3d 106, 111 (2d Cir. 2000), in brief, the Second Circuit held:

> Under various fair readings of the complaint, this case similarly involves
> negligence unrelated to any plausible policy objectives. An inspector's decision
> (motivated simply by laziness) to take a smoke break rather than inspect the
> machines, or an absent-minded or lazy failure to notify the appropriate authorities
> upon noticing the damaged cable, are examples of negligence fairly encompassed

by the allegations of the complaint that do not involve considerations of public policy.

The conclusion of the Second Circuit in Coulthurst thus does not differ from the conclusion of

the Third Circuit in Cestonaro: there is no rational nexus between the decisions at issue and

matters of governmental policy.  Coulthurst does not provide an exception to the exception for

allegations of government laziness or carelessness.

Plaintiffs cite as well the Second Circuit's decision in Andrulonis v. United States, 952

F.2d 652, 655 (2d Cir. 1991), but this case also provides no support for their position.  What is

clear from examination of the cases is that some negligent acts by government agents are

susceptible to policy analysis, while others are not.  The cases show no general exception to the

exception for acts of carelessness or laziness; the case law points to no bright line rules.  Courts

must decide whether the conduct in question is susceptible to policy analysis.  This Court finds

that the SEC's decisions about how to investigate Madoff are susceptible to policy analysis: there

is a rational nexus between these decisions and governmental policy.  The SEC is shielded from

liability for its allegedly negligent conduct in investigating Madoff by the discretionary function

exception.

Plaintiffs further argue that the kind of policy rationale articulated by the Government,

which centers on limited resources, has been repeatedly rejected by courts, citing a number of

Ninth Circuit cases.  Plaintiffs quote one Ninth Circuit case which might appear to give one

pause:

> [E]very failure to warn, every inspection and maintenance decision can be
> couched in terms of policy choices based on allocation of limited resources.  As
> we have noted before in the discretionary function exception context, "budgetary
> constraints underlie virtually all governmental activity."  Were we to view

> inadequate funding alone as sufficient to garner the protection of the discretionary function exception, we would read the rule too narrowly and the exception too broadly. Instead, in order to effectuate Congress's intent to compensate individuals harmed by government negligence, the FTCA, as a remedial statute, should be construed liberally, and its exceptions should be read narrowly.

O'Toole v. United States, 295 F.3d 1029, 1037 (9th Cir. 2002). Plaintiffs, however, conveniently omit the topic sentence that precedes that quote: "The danger that the discretionary function exception will swallow the FTCA is especially great where the government takes on the role of a private landowner." Id. Plaintiffs do not mention that the Ninth Circuit's position in O'Toole is therefore qualified and limited to cases in which the government acts as a private landowner.

Plaintiffs also point to the Ninth Circuit's decision in Whisnant v. United States, 400 F.3d 1177, 1181 (9th Cir. 2005), but, again, fail to fairly represent what the Ninth Circuit actually said. In Whisnant, an employee was injured by toxic mold which had been allowed to colonize a commissary's meat department for years. Id. at 1179. The Ninth Circuit refused to find that the negligence which resulted in the toxic mold infestation fell within the discretionary function exception, stating that this was a matter of safety, not policy: "Because removing an obvious health hazard is a matter of safety and not policy, the government's alleged failure to control the accumulation of toxic mold in the Bangor commissary cannot be protected under the discretionary function exception." Id. at 1183. The case at bar is not analogous. Plaintiffs have not alleged that Madoff was an obvious hazard, much less an obvious health hazard. Even if O'Toole and Whisnant were controlling authority, these cases are distinguishable from the instant case. Nor is the negligent conduct alleged in this case similar to that in Cestonaro – which, like O'Toole and Whisnant, involved liability for a failure to warn about well-known dangers. Plaintiffs have not alleged here that Madoff constituted a clear and obvious danger to

investors, nor that the SEC knew of this danger but failed to warn the public that investing with

Madoff was clearly dangerous.

Lastly, as the Government notes, two district courts have recently found that the

discretionary function exception bars claims against the United States in cases involving claims

that the SEC failed to properly investigate Madoff: Dichter-Mad Family Ptnrs, LLP v. United

States, 707 F. Supp. 2d 1016, 1018 (C.D. Cal. 2010), and Molchatsky v. United States, 778 F.

Supp. 2d 421, 425 (S.D.N.Y. 2011). The courts in both these cases applied the two-step

discretionary function exception inquiry to similar allegations of SEC negligence regarding

Madoff and arrived at conclusions consistent with this Court's. See also Robert Juan Dartez,

LLC v. United States, 2011 U.S. Dist. LEXIS 133761 (N.D. Tex. Nov. 14, 2011) (applying

discretionary function exception in dismissing case against SEC for failure to investigate another

alleged fraudster).

The Government has proven that the SEC's conduct in investigating Madoff is shielded

by the FTCA's discretionary function exception. The Complaint fails to "allege facts which

would support a finding that the challenged actions are not the kind of conduct that can be said to

be grounded in the policy of the regulatory regime." Gaubert, 499 U.S. at 324-325. Plaintiffs'

claims fall within the discretionary function exception to the FTCA, and this Court therefore

lacks subject matter jurisdiction over this case. See Merando, 517 F.3d at 175.

Only the first claim in the Complaint asserts a violation of the FTCA, and the other two

claims allege that the SEC aided and abetted BLMIS in its misconduct. As the Government

contends, this is merely an attempt to use artful pleading to escape the reach of the discretionary

function exception. Plaintiffs have failed to allege facts which support any claims against the

SEC for aiding and abetting Madoff.  This Court reads the second and third claims to be failed

attempts to dress up the cause of action of the first claim in new clothes.  The failure of Plaintiffs

to defeat the motion to dismiss, based on the discretionary function exception, is fatal to the

entire Complaint.  The Government's motion to dismiss will be granted, and the Complaint will

be dismissed in its entirety for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss the Complaint is

**GRANTED**, and the Complaint is dismissed for lack of subject matter jurisdiction.


    /s Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: December 8, 2011